UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CHARLESTON IMMERSIVE/INTERACTIVE MEDIA
STUDIO, LLC,

                             Petitioner,

         -v-

ANDREW AYDIN,

                             Respondent.

24 Civ. 4943 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

This lawsuit arises from an arbitration over a contract dispute between petitioner Charleston Immersive/Interactive Media Studio, LCC ("Ci2") and respondent Andrew Aydin. In April 2024, an arbitrator appointed by the American Arbitration Association ("AAA") ruled in Aydin's favor. On July 1, 2024, Ci2 filed this action seeking vacatur of the arbitral award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

Competing motions are presently pending relating to a discrete issue involving attorney-client privilege. Ci2 moves to set aside an evidentiary ruling by the arbitrator that such privilege covers a memorandum prepared by Aydin's former counsel. The memorandum reflects that counsel's contemporaneous notes from a telephone conversation with Aydin. Ci2 seeks an order permitting it to use that memorandum in this proceeding.[1] Aydin, for his part, moves for (1) a protective order barring Ci2 from using the memorandum and information derived from it, and

---

[1] As noted *infra*, in an apparent attempt to circumvent the limited scope of federal-court review of evidentiary determinations in arbitral proceedings, Ci2 styles its submission as a motion to compel production for *in camera* inspection by the Court. Dkts. 36, 45. But it fails to grapple with the basic precept that "[f]ederal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997).

(2) to disqualify Ci2's counsel, for abusive conduct in publicly filing the privileged document in this proceeding.

For the reasons that follow, the Court denies Ci2's motion to compel and grants Aydin's motion for a protective order. And, although dismayed by Ci2's counsel's conduct in this litigation, the Court denies Aydin's motion to disqualify.

## I.     Background[2]

### A.     Underlying Agreement and Arbitration

In late 2015, Ci2 entered into an option agreement with the late Congressman John Lewis and Aydin for the rights to produce an animated television series based on Lewis and Aydin's graphic novel, *March*. Award ¶¶ 2, 18–20. Ci2 assembled a creative team and secured interest from Netflix to fund production and distribute the series. *See id.* ¶¶ 22–24. However, in early 2019, negotiations broke down. *See id.* ¶¶ 25–39. Ci2 alleges that such was due to "extortionate threats and demands" Aydin made to Lewis. Pet. ¶¶ 10–18. After Lewis's death, in February 2022, Ci2 settled with his estate, but not with Aydin. Award ¶ 132. The arbitration at issue here was then held between Ci2 and Aydin, in which Aydin prevailed. *See id.* ¶¶ 175–76. In this action, Ci2 seeks to vacate the arbitrator's award. Ci2 argues that the arbitrator improperly excluded key evidence and exhibited bias in his decision-making. *Id.* ¶¶ 34–35.

The pending motions center on a document that the arbitrator excluded on the basis of Aydin's attorney-client privilege. In mid-2023, Lewis's estate (the "Estate") turned over a

---

[2] Unless otherwise noted, the Court draws these facts from the Petition, Dkt. 1 ("Pet."), the Award, Dkt. 1, Ex. 7 ("Award"), and the parties' submissions in support of and in opposition to the instant motions. These are Aydin's memorandum in support of his motion for a protective order, Dkt. 28 ("Aydin Br."); Ci2's memorandum in support of its motion to compel and in opposition to Aydin's motion, Dkt.45 ("Ci2 Br."); the declarations of James Kevin Holmes, Dkt. 37 ("Holmes Decl."), David M. Olasav, Dkt. 40 ("Olasav Decl."), and Aydin's reply in support of his motion for a protective order, Dkt. 44 ("Aydin Reply Br.").

memorandum (the "Weinrib Memorandum"), prepared in 2019 by Aydin and Lewis's then-shared counsel, Kenneth Weinrib, Esq. It reflected Weinrib's contemporaneous notes from a telephone conversation with Aydin. Dkt. 12, Ex. 11 at 3–4 (email dated July 23, 2023 from Ci2's counsel to Aydin's counsel, describing the Weinrib Memorandum). Aydin promptly objected on the ground that the memorandum was protected by the attorney-client privilege. Dkt. 12, Ex. 8 at 3 (email dated July 14, 2023, from Aydin's counsel to Ci2's counsel). After Ci2 sought to introduce the memorandum during the arbitration, the arbitrator commissioned briefing and heard argument on the privilege issue. *See* Award ¶¶ 79–80; May Decl., Ex. 8 (transcript of hearing), Ex. 12 (Procedural Order No. 11).

The arbitrator ultimately upheld Aydin's privilege claim as to the Weinrib Memorandum. The arbitrator directed Ci2 to "destroy all physical and electronic copies of the document in its possession, custody or control and provide confirmation of its compliance to the Arbitrator and [Aydin] by September 29, 2023." May Decl., Ex. 11 at 9; *see also id.*, Ex. 17 (Procedural Order No. 12) (reaffirming conclusion). In addition, the arbitrator held, the memorandum was "extraneous to the issues before him," such that "even if admitted, [it] would not change [his] findings, analysis, or the decision reached in th[e] Final Award." Award at 30 n.11.

### B. Procedural History

On July 1, 2024, Ci2 filed the Petition to vacate the Award. Dkt. 1. The Petition, which in its entirety was filed publicly, disclosed the substance of the Weinrib Memorandum. The Petition identified that memorandum as document "KW-JRL-Estate 805-808." Dkt. 17.

On July 12, 2024, Aydin filed emergency *ex parte* motions to (1) seal paragraph 24 of the Petition, which revealed privileged information; and (2) enter a temporary restraining order ("TRO") enjoining Ci2 and its counsel from further divulging the privileged information. Dkt. 12.

3

On July 15, 2024, the Court struck paragraph 24. Dkt. 17 at 2 ("July 15 Order"). It observed that Ci2 had exhibited "seemingly blatant disrespect for the attorney-client privilege" by, *inter alia*, divulging, in a public filing, information the arbitrator had held privileged. *Id.* The Court, however, denied Aydin's TRO application because Aydin had not identified an underlying claim on which he was likely to succeed on the merits. The Court explained that "Ci2's disregard of the attorney-client privilege is not itself a claim in this litigation." *Id.* at 3.

On July 24, 2024, Aydin moved (1) for a protective order barring Ci2 from using the Memorandum or any information derived therefrom in this action; and (2) to disqualify Ci2's counsel. Dkt. 28. He filed a memorandum, *id.*, and declaration in support, *see* Dkt. 28-1. On August 7, 2024, Ci2 filed a cross-motion to compel production of the Memorandum, Dkt. 36, and declarations in support, Dkts. 37, 40. On August 14, 2024, Ci2 filed a memorandum in support. Dkt. 45.[3] That same day, Aydin replied. Dkt. 44.

## II. Discussion

Seeking to overturn the arbitrator's evidentiary ruling, Ci2 moves to compel disclosure of the Memorandum. Aydin, in turn, seeks a protective order barring Ci2 from using the Memorandum and information derived from it. The Court first considers these dueling motions, before turning to Aydin's bid to disqualify Ci2's attorneys.

---

[3] Ci2 did not timely file its memorandum of law. *See* Dkt. 29 (directing Ci2 to respond by August 7, 2024); Dkt. 41 at 1 (Ci2's letter filed August 9, 2024 acknowledging failure to file its memorandum of law on the docket of this case). The Court nevertheless considers Ci2's late-filed memorandum of law based on its counsel's representation that it timely served such on Aydin and counsel's apparent unfamiliarity with the Court's electronic filing system. Dkt. 41 at 1; *see also* Dkt. 41-2 (filing "unredacted" version of brief on the public docket); Dkt. 42 (order denying motion to seal for failure to comply with Court's Individual Rules and Practices); Dkt. 45 (corrected filing on August 14, 2024).

4

### A. Aydin's Motion for a Protective Order and Ci2's Motion to Compel[4]

#### 1. Legal Framework

The FAA embodies "a national policy favoring arbitration." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008); *see also, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983). To preserve arbitration's "essential virtue of resolving disputes straightaway," the Act provides for "expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall St.*, 552 U.S. at 578, 588.

Arbitration awards are subject to "very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). As a result, a party seeking vacatur of an arbitral award "bears a 'very high burden.'" *Magid v. Waldman*, No. 20-3216, 2022 WL 571424, at *1 (2d Cir. Feb. 25, 2022) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)); *see also, e.g., Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021); *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).

"'Only a very narrow set of circumstances delineated by statute and case law permit vacatur' of an arbitration award." *Spliethoff Transp. B.V. v. Phyto-Charter Inc.*, No. 23-7308, 2024 WL 5165511, at *1 (2d Cir. Dec. 19, 2024) (quoting *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007)). Section 10 of the FAA sets out four

---

[4] Ci2 claims that Aydin, before moving for a protective order, failed to certify that the parties met and conferred, as required by Federal Rule of Civil Procedure 26. That is wrong. *See* Aydin Br. at 11 ("During a meet and confer on July 19, Petitioner's Attorneys agreed they would not oppose a motion to further seal the Petition with respect to Paragraph 35.2. Respondent further informed Petitioner's Attorneys that they would be filing a motion for a protective order and to disqualify, and this motion followed.").

5

grounds upon which an award can be vacated. *See* 9 U.S.C. § 10(a)(1)–(4).[5] In addition, the Second Circuit has held, "as judicial gloss" on the statutory grounds, an arbitrator's "'manifest disregard' of the law or of the terms of the arbitration agreement" supplies "a valid ground" for vacatur. *Seneca Nation*, 988 F.3d at 625 (quoting *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451–52 (2d Cir. 2011)). "A court may vacate an arbitral award on this ground only if the court 'finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)); *see also, e.g., Wallace*, 378 F.3d at 190 ("A federal court cannot vacate an arbitral award merely because it is convinced that the arbitrat[or] . . . made the wrong call on the law."); *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) ("An arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." (citation omitted)).

---

[5] The four statutory grounds are as follows:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Important here, "[i]t is well settled that procedural questions that arise during arbitration, such as . . . which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987) and 9 U.S.C. § 10(a)(3)); *see also, e.g., Ripa v. Cathy Parker Mgmt., Inc.*, No. 98 Civ. 577, 1998 WL 241621, at *3 (S.D.N.Y. May 13, 1998) (FAA "has been narrowly construed so as not to impinge on the broad discretion afforded arbitrators to decide what evidence should be presented"). Moreover, the Second Circuit has "made clear that 'in making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts.'" *Spliethoff*, 2024 WL 5165511, at *1 (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)). Consequently, "except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain*, 120 F.3d at 20; *accord Spliethoff*, 2024 WL 5165511, at *1 ("None of the evidentiary or procedural rulings about which Phyto-Charter complains deprived it of 'fundamental fairness' in the arbitration proceedings."); *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) (reversible error for district court to disturb arbitrator's rulings excluding evidence where those had "not impair[ed] the 'fundamental fairness' of the proceeding"); *cf. Lyeth v. Chrysler Corp.*, 929 F.2d 891, 898 (2d Cir. 1991) (district courts "ha[ve] discretion to deny discovery" in post-arbitration proceedings).

### 2. Application

Notwithstanding these familiar principles, Ci2 argues that the Court should set aside the arbitrator's ruling excluding the Weinrib Memorandum as privileged. It argues that the arbitrator erred in finding that (1) the Memorandum is privileged; (2) the Estate's inadvertent production of it did not amount to a waiver of privilege by Aydin; and (3) the "crime-fraud exception" to the

7

privilege does not apply to the Memorandum. *See* Ci2 Br. at 2–7 (citing *United States v. Zolin*, 491 U.S. 554, 562–63 (1989)).

Ci2's arguments are very wide of the mark. At the outset, insofar as Ci2 appears to seek *de novo* review of the arbitrator's privilege ruling, Ci2 misapprehends the scope of federal-court review of evidentiary determinations in arbitral proceedings. *See, e.g., Nat'l Football League Mgmt.*, 820 F.3d at 545; *Tempo Shain*, 120 F.3d at 20. Ci2 does not argue that the arbitrator's exclusion of the Memorandum impaired the "fundamental fairness" of the arbitral proceeding or that the arbitrator denied it an opportunity to be heard. *See, e.g., LJL*, 725 F.3d at 195; *Spliethoff*, 2024 WL 5165511, at *1. Nor could it reasonably so argue.[6] The arbitrator gave Ci2 ample opportunity to contest Aydin's assertion of attorney-client privilege with respect to the Memorandum. He commissioned briefing and heard argument on this issue. *See* Award ¶¶ 79–80; May Decl., Ex. 8 (transcript of hearing), Ex. 12 (Procedural Order No. 11). And Ci2 availed itself of that opportunity. It made six distinct arguments in favor of admitting the Memorandum, May Decl., Ex. 12, including the three it reprises here: that (1) the Memorandum was not covered by privilege; (2) Aydin had waived any privilege claim; and (3) the Memorandum was subject to the crime-fraud exception.

In any event, the arbitrator's evidentiary rulings with respect to the Memorandum, far from reflecting manifest disregard for the law, were based on familiar legal principles. And, even if the law provided for judicial review of these for reasonableness, the arbitrator, based on this Court's review, reasonably reached and ably explained his outcomes. These included the

---

[6] Ci2 does not, and cannot plausibly, dispute that the AAA arbitrator had the authority to decide the applicability of the attorney-client privilege. *See* 9 U.S.C. § 10(a)(4); Award ¶ 11 (quoting parties' arbitration agreement).

8

that the Memorandum was privileged and that, even if not, the Memorandum was "extraneous" to the Award in Aydin's favor. *See* May Decl., Ex. 12 (Procedural Order No. 11).

First, as the arbitrator explained, Aydin had met his burden to show that the Memorandum was protected by a privilege whose protection he had not waived. To this end, the arbitrator noted that attorney Weinrib, who jointly represented Aydin and Lewis, had prepared the memorandum as a "memo to file," and that it covered attorney-client communications— Weinrib's contemporaneous notes from a phone conversation with his client Aydin. *See* Award ¶ 80; *see* May Decl, Exs. 1–3, 12. The arbitrator further explained why Ci2's privilege-waiver argument was meritless. Ci2 had argued that the Estate's inadvertent production of the Memorandum to Ci2 reflected a waiver by Aydin.[7] But, as the arbitrator noted, Aydin's counsel, promptly on learning of the production, contacted counsel for the Estate and Ci2 and asked that they delete the Memorandum from the electronic production. Award ¶ 80 & n.11. As the arbitrator explained, Aydin had designated the Memorandum as privileged in a privilege log provided to the Estate's counsel, and the Estate's production "was intended to be limited to documents as to which Aydin had *not* maintained an ongoing privilege claim." *Id.* The Estate's counsel thereafter deleted the Memorandum from the electronic production. *Id.* Further, the arbitrator explained, under the circumstances of Weinrib's joint representation of Aydin and Lewis, the "Estate did not have the unilateral power to waive the privilege as to communications between counsel and Mr. Aydin or between counsel and [Aydin and Lewis]." *Id.* Finally, the arbitrator held, the Memorandum did not fall under the crime-fraud exception. That exception,

---

[7] The memorandum was included by Estate's counsel in an electronic production of documents pursuant to the settlement agreement between Ci2 and the Estate which required the Estate to produce, upon Ci2's request, all *non-privileged* documents in its control that related to Ci2's claims against Aydin in the arbitration. Aydin was not a party to that agreement. *See* Pet., Ex. 8 ¶ 4 (settlement agreement).

9

he correctly recognized, *id.*, has "a narrow and precise" application, *United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351 (2014). *See also, e.g., In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986). He did not find a sufficient factual basis to support Ci2's assertion of the crime-fraud exception, and the content of the Memorandum, which he inspected in an abundance of caution, confirmed this conclusion. Award ¶ 80 n.11; *see also* May Decl., Ex. 12.

Second, the arbitrator ruled, the Memorandum was properly excluded because, even if permissibly considered, it was "extraneous to the issues before him." Award at 30 n.11. The Memorandum, the arbitrator stated, "even if admitted, would not change" his "findings, analysis, or the decision reached in th[e] . . . Award." *Id.* That determination was well within the arbitrator's discretion. *See Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 289 (S.D.N.Y. 2007) ("[A]n arbitrator has discretion to admit or reject evidence and determine what materials may be cumulative or irrelevant."); *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 738 F. Supp. 789, 792 (S.D.N.Y. 1990) (same), *aff'd*, 931 F.2d 191 (2d Cir. 1991); *Catz Am. Co. v. Pearl Grange Fruit Exchange, Inc.*, 292 F. Supp. 549, 553 (S.D.N.Y. 1968) ("Arbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong the proceedings."); *cf. Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23 Civ. 7331, 2024 WL 246367, at *2 (S.D.N.Y. Jan. 23, 2024) (refusing to afford "a second bite at the apple" to "respondent [who] was given the opportunity to obtain the discovery it now seeks during the arbitration proceedings" (quoting *Doscher v. Sea Port Grp. Sec., LLC*, 2017 WL 6061653, at *5 n.4 (S.D.N.Y. Dec. 6, 2017), *aff'd*, 752 F. App'x 102 (2d Cir. 2019))). On this Court's review, there is no basis to second-guess that judgment, which Ci2 fails to address in its submission.

At bottom, the assembled record leaves the Court with no doubt that the arbitrator gave "each of the parties to [the] dispute an adequate opportunity to present its evidence and argument" as to the Memorandum. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 107 (2d Cir. 2013) (quoting *Tempo Shain*, 120 F.3d at 20). Ci2's disappointment with the outcome of the arbitral proceedings does not give this Court a basis to second-guess either the arbitrator's evidentiary ruling or his alternative determination that the evidence at issue was extraneous to his decision. *See, e.g., Doscher*, 752 F. App'x at 103; *Johnson v. Nat'l Football League Players Ass'n*, No. 17 Civ. 5131, 2018 WL 8188558, at *14 (S.D.N.Y. Oct. 3, 2018); *Kondot S.A. v. Duron LLC*, 586 F. Supp. 3d 246, 259; (S.D.N.Y. 2022); *Inficon, Inc. v. Verionix, Inc.*, 182 F. Supp. 3d 32, 40 (S.D.N.Y. 2016); *Areca Inc. v. Oppenheimer & Co.*, 960 F. Supp. 52, 55 (S.D.N.Y. 1997).

The Court accordingly denies Ci2's motion to compel production of the Memorandum and grants Aydin's cross-motion for a protective order precluding its use. Ci2 categorically may not use the Weinrib Memorandum and any information derived therefrom. *See* Fed. R. Civ. P. 26(c)(1) (court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); *see also* July 15 Order (expressing dismay at Ci2's counsel's "seemingly blatant disrespect for the attorney-client privilege" in their continued defiance of the arbitrator's evidentiary ruling).

### B.  Disqualification of Counsel

#### 1.  Legal Framework

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 55 (S.D.N.Y. 2017) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). "Generally, disqualification motions are disfavored, as they are

11

often interposed for tactical reasons, and . . . even when made in the best of faith, such motions inevitably cause delay." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281 (S.D.N.Y. 2011) (citation omitted). Accordingly, such motions are "subjected to a high standard of proof." *Id.* (citing *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 2017 (S.D.N.Y. 2009)). "Disqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). However, "any doubt is to be resolved in favor of disqualification." *John Wiley*, 126 F. Supp. 3d at 419.

Although federal courts look to state disciplinary rules in considering motions to disqualify, "such rules need not be rigidly applied as they merely provide general guidance." *Mori v. Saito*, 785 F. Supp. 2d 427, 432 (S.D.N.Y. 2011) (citation omitted). Rather, "[t]he disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (citation omitted).

### 2. Application

Aydin moves to disqualify Ci2's counsel, David Olasov, Esq. and Kevin Holmes, Esq. ("Ci2's counsel"). He argues that Ci2's counsel (1) disregarded his assertion of privilege over the Weinrib Memorandum when, during the arbitration, and after Aydin's counsel notified them that it was privileged and had been inadvertently produced, they drew upon its contents; and (2) defied the arbitrator's order finding the Memorandum privileged and directing them to destroy their copy of it, when, in public filings in this Court, they quoted and disclosed attorney-client communications contained in the Memorandum. *See* Aydin Br. at 5, 15. Aydin argues that he will be prejudiced by the continued involvement of Olasov and Holmes in this case, because their

misconduct—including publicly filing a Petition that revealed privileged communications, *see* July 15 Order—augurs further disregard for the arbitrator's privilege ruling.

Ci2's counsel's conduct in publicly quoting in a Petition a document which an arbitrator had held privileged and ordered destroyed was objectively improper. It is an appropriate matter for review by disciplinary authorities. Even if Ci2's counsel believed there was a sound basis to challenge the Award based on the arbitrator's privilege ruling—and, as reviewed above, there is not—the Court cannot conceive of a justification for Ci2's counsel to reveal contents of the Memorandum in a public filing. Yet Ci2's counsel brazenly did so under circumstances they had to appreciate flouted their adversary's privilege. In paragraph 24 of the Petition as filed, Ci2's counsel directly quoted, and synopsized in detail, a series of statements by Aydin to his counsel recorded in the Memorandum. *See* Dkt. 1 ¶ 24 (now-sealed Petition). This conduct reveals both disregard for its adversary's privileged communications and contempt for the decision of the arbitrator holding the Memorandum privileged. It was unprofessional.

Olasav's and Holmes's misconduct does not, however, require their disqualification from this case. A movant bears a "heavy burden of demonstrating that disqualification is warranted." *Simmions v. Pierless Fish Corp.*, 592 F. Supp. 3d 68 (E.D.N.Y. 2020). The Second Circuit "has adopted 'a restrained approach,' which calls for disqualification only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case." *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896 (2d Cir. 1982) (first quoting *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir. 1980), and then citing *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). "Where a threat of tainting the trial does not exist, therefore, the litigation should proceed, remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar." *Id.* at 896–97; *accord United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241

(2d Cir. 2016); *Eur. Cmty. v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 304 (E.D.N.Y. 2001) ("Unless the 'taint' threshold has been crossed, precedent counsels reliance upon alternative institutional mechanisms for assessing the ethical propriety *vel non* of particular instances of questionable attorney conduct.").

Such is the case here. Aydin's premise—that Ci2's counsel's earlier breach of Aydin's privileged communications is predictive of future such misconduct—does not follow. This Court, above, has granted Aydin's motion for a protective order as to the Memorandum. The Court's order states: "Ci2 categorically may not use the Weinrib Memorandum and *any information derived therefrom*." *See supra* at 11 (emphasis added). This bright-line order mitigates the risk that Ci2's counsel would "continue to attempt to use information derived from the [privileged] documents[] in this litigation." Aydin Br. at 18. It exposes counsel who breach the order to sanctions for contempt. The Court expects Ci2's counsel to rigorously comply.

Aydin separately expresses concern that Ci2's counsel's exposure to the Memorandum risks "tainting" the proceedings before this Court. He does not explain how, however, and the Court will not separate Ci2 from its chosen counsel without a more substantial basis. *See, e.g., Nyquist*, 590 F.2d at 1246 ("[W]e have utilized the power of trial judges to disqualify counsel where necessary to preserve the integrity of the adversary process in actions before them.").[8]

---

[8] *In re Beiny*, 129 A.D.2d 126, 142 (1st Dept. 1987), on which Aydin relies, does not assist him on this point. There, the First Department held disqualification necessary to "preserve the integrity of the process by which rights are vindicated," where the disqualified counsel had obtained the opposing party's potentially privileged documents "by improper design," "deceit," and "blatant abuse" of "ethical and legal limitations." *Id.* at 143–44. The "tainted information" consisted of files created over a more than 10-year period by a non-party law firm and had been "used extensively" by disqualified counsel. *Id.* at 136. Those extraordinarily "serious" circumstances led the court to find exclusion of the privileged documents inadequate to "deter such [mis]conduct and insure the integrity of the process." *Id.* at 141, 143.

14

The limited scope of this proceeding, involving a petition to vacate an arbitral award, reinforces this conclusion. *See, e.g., Zurich Am. Ins.*, 811 F.3d at 588. The case is not destined for trial. The Court expects to resolve Ci2's Petition substantially on the basis of briefing applying the limited charter for vacatur to the circumstances here. *Tempo Shain*, 120 F.3d at 19 (citing 9 U.S.C. § 10(a)). These circumstances do not leave obvious ground for Ci2's counsel to exploit, to Aydin's detriment here, their knowledge of the contents of the Memorandum.

Denial of disqualification does not spare Ci2's counsel consequences or diminish this Court's expectation of ethical lawyering. The proper remedy lies in "the disciplinary machinery of the state and federal bar[s]," which are well-positioned to consider whether the circumstances of counsel's public citation of an adversary's document that an arbitrator had held privileged warrants remedial action. *Bottaro*, 680 F.2d at 896; *see also Dep't Frontline Commc'ns Int'l v. Sprint Commc'ns Co. L.P.*, 232 F. Supp. 2d 281, 288 (S.D.N.Y. 2002) (denying motion to disqualify and instructing moving party to report potential ethical violation by adversary's counsel to state and federal court grievance committees); *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) (denying disqualification because, *inter alia*, "the proper place" for considering ethical breach was "the appropriate professional disciplinary body"); *Reilly v. Comput. Assocs. Long-Term Disability Plan*, 423 F. Supp. 2d 5 (E.D.N.Y. 2006) (similar); *cf., e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 236–37 (2d Cir. 1977) (courts "have sought to strike a delicate balance between the [litigant's] interest in representation by counsel of its choice and the need to maintain high ethical standards within the profession of law"); *Nyquist*, 590 F.2d at 1246 ("[W]ith rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's

representation of his client . . ., or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . thus giving his present client an unfair advantage[.] . . . But in other kinds of cases, we have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct.").[9]

The Court accordingly denies Aydin's motion to disqualify.

## CONCLUSION

For the foregoing reasons, the Court (1) grants Aydin's motion for a protective order, (2) denies Ci2's cross-motion to compel, and (3) denies Aydin's motion to disqualify.

By separate order, the Court will set a prompt briefing schedule for Ci2's motion to vacate the Award, to the extent based on grounds other than the Weinrib Memorandum, and for Aydin's anticipated cross-motion to confirm the Award. *See* Dkt. 32.

The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 16, 2025
New York, New York

---

[9] Because Aydin has not shown that the continued involvement of Ci2's counsel would impair the integrity of the proceedings, the Court does not have occasion to consider his claim that they were "arguably in violation of Rule 4.4(b) of the New York Rules of Professional Conduct." Aydin Br. 15. Regardless, state disciplinary rules "need not be rigidly applied as they merely provide general guidance" in considering motions to disqualify. *Mori*, 785 F. Supp. 2d at 432.