UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARLESTON IMMERSIVE/INTERACTIVE MEDIA STUDIO, LLC,

                                   Petitioner,

-v-

ANDREW AYDIN,

                                   Respondent.

24 Civ. 4943 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This proceeding stems from a contract dispute between petitioner Charleston Immersive/Interactive Media Studio, LCC ("Ci2") and respondent Andrew Aydin. Ci2 and Aydin arbitrated their dispute before an arbitrator appointed by the American Arbitration Association ("AAA"), who issued a final award in Aydin's favor. *See* Dkt. 51-4 (the "Award"). On July 1, 2024, Ci2 filed this action seeking vacatur of the Award, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, on the grounds that the arbitrator improperly excluded key evidence and exhibited bias in his decision-making. However, after the Court denied Ci2's bid to overturn an evidentiary ruling by the arbitrator, *see* Dkt. 46, Ci2 notified the Court that it would not move for vacatur or oppose Aydin's anticipated cross-motion to confirm the Award.

Pending before the Court is Aydin's unopposed motion to confirm. For the following reasons, the Court confirms the Award.

I.  **Background**[1]

A.  **Option Agreement and Arbitration**

Ci2 is a limited liability company organized under the laws of South Carolina. Pet ¶ 1. Its members are citizens of California. *Id.* Aydin is a citizen of North Carolina. *Id.*

In late 2015, Ci2 entered into an option agreement with the late Congressman John Lewis and Aydin for the rights to produce an animated television series based on Lewis and Aydin's graphic novel, *March*. Award ¶¶ 2, 18–20; *see also* Dkt. 51-1 (the "Option Agreement"). Ci2 assembled a creative team and secured interest from Netflix to fund production and distribute the series. *See* Award ¶¶ 22–24. But, in early 2019, the contemplated transaction fell apart. *See id.* ¶¶ 25–39. Ci2 alleges, centrally, that negotiations were derailed by the "extortionate threats and demands" Aydin made to Lewis in connection with the Netflix proposal. Pet. ¶¶ 10–18.[2]

On April 9, 2019, Ci2 initiated the arbitral proceedings at issue here, in which Aydin prevailed. *See id.* ¶¶ 175–76. Ci2 claimed that, by unreasonably rejecting Netflix's proposal, Aydin (1) breached or anticipatorily breached the option agreement, and (2) breached the implied covenant of good faith and fair dealing, under New York law (collectively, the "contract-based claims"). *See id.* ¶ 1; *see also* Option Agreement § 3(m) (providing that Aydin's approval was "not to be unreasonably withheld"). Ci2 also alleged that Aydin breached an agreement in principle that the parties had entered into after mediation, dated August 19, 2019, by hindering Ci2's attempt to revive the negotiations with Netflix. *See* Award ¶ 1.

---

[1] Unless otherwise noted, the Court draws these facts from Ci2's Petition to Vacate, Dkt. 34 (the "Petition" or "Pet.") and the Award, Dkt. 51-4.

[2] After Lewis's death, in February 2022, Ci2 settled with his estate, but not with Aydin. Award ¶ 132.

2

From July 24 to July 26, 2023, the arbitration was held before an arbitrator appointed by the AAA. The arbitrator commissioned multiple rounds of briefing and heard argument from the parties. *See id.* ¶¶ 71–83. He also received testimony from five witnesses, including from Aydin and the co-owners of Ci2, Debra Rosen and Elliott Lewitt. *See id.* ¶ 78.

On April 11, 2024, the arbitrator issued the Award, which dismissed each of Ci2's claims. *See id.* ¶¶ 175–76. As to the contract-based claims, the arbitrator found, Ci2 had not shown that Aydin had unreasonably withheld his consent to the Netflix proposal. *See id.* ¶¶ 142, 145–46, 152. With respect to the agreement in principle, the arbitrator doubted that it created any enforceable obligations. *See id.* ¶ 162. But even assuming it did, the arbitrator found, Aydin had not breached such. *See id.* ¶¶ 163–65.

### B. This Action

On July 1, 2024, Ci2 filed its Petition to vacate the Award. Dkt. 1. The Petition, which in its entirety was filed publicly, disclosed the substance of a memorandum prepared in 2019 by Aydin and Lewis's then-shared counsel, Kenneth Weinrib, Esq. (the "Weinrib Memorandum"). The memorandum reflected Weinrib's contemporaneous notes from a telephone conversation with Aydin, *see* Dkt. 12, Ex. 11 at 3–4, and so had been excluded by the arbitrator as protected by the attorney-client privilege.[3]

---

[3] After Ci2 sought to introduce the memorandum during the arbitration, the arbitrator commissioned briefing and heard argument on the privilege issue. *See* Award ¶¶ 79–80. The arbitrator ultimately upheld Aydin's privilege claim. The arbitrator directed Ci2 to "destroy all physical and electronic copies of the document in its possession, custody or control and provide confirmation of its compliance to the Arbitrator and [Aydin] by September 29, 2023." Dkt. 28-12, at 9. In addition, the arbitrator held, the memorandum was "extraneous to the issues before him," such that "even if admitted, [it] would not change [his] findings, analysis, or the decision reached in th[e] Final Award." Award at 30 n.11.

On July 12, 2024, Aydin filed emergency *ex parte* motions to (1) seal paragraph 24 of the Petition, which revealed privileged information from the Weinrib Memorandum; and (2) enter a temporary restraining order ("TRO") enjoining Ci2 and its counsel from further divulging the privileged information. Dkt. 12.

On July 15, 2024, the Court struck paragraph 24. Dkt. 17 at 2 ("July 15 Order"). It observed that Ci2 had exhibited "seemingly blatant disrespect for the attorney-client privilege" by, *inter alia*, divulging, in a public filing, information the arbitrator had held privileged. *Id.* The Court, however, denied Aydin's TRO application because Aydin had not identified an underlying claim on which he was likely to succeed on the merits. *Id.* at 3.

On July 24, 2024, Aydin moved (1) for a protective order barring Ci2 from using the Weinrib Memorandum or any information derived therefrom in this action; and (2) to disqualify Ci2's counsel, citing counsel's public citation of Aydin's document that the arbitrator had held privileged. Dkt. 28. He filed a memorandum, *id.*, and declaration in support, *see* Dkt. 28-1. On August 7, 2024, Ci2 filed a cross-motion to compel production of the Memorandum, Dkt. 36, and declarations in support, Dkts. 37, 40. On August 14, 2024, Ci2 filed a memorandum in support. Dkt. 45. That same day, Aydin replied. Dkt. 44.

On January 16, 2025, the Court (1) denied Ci2's motion to compel, (2) granted Aydin's motion for a protective order, and (3) denied Aydin's motion to disqualify. Ci2's attempt to overturn the arbitrator's evidentiary ruling was "very wide of the mark," the Court found, because Ci2 failed to grapple with the strict limitations placed by the FAA on federal-court review of evidentiary determinations in arbitral proceedings. Dkt. 46 at 1 n.1, 7–8; *see also, e.g.*, *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987),

4

and 9 U.S.C. § 10(a)(3)). Ci2 did not, and could not plausibly, argue that the arbitrator's exclusion of the Memorandum impaired the "fundamental fairness" of the arbitral proceeding or that the arbitrator denied it an opportunity to be heard. Dkt. 46 at 8. On the contrary, the Court explained, the arbitrator had given Ci2 ample opportunity to contest Aydin's assertion of attorney-client privilege with respect to the Memorandum. *Id.* He commissioned briefing and heard argument on this issue. In any event, the Court found, the arbitrator's evidentiary rulings with respect to the Memorandum were based on "familiar legal principles" and reasonably explained. *Id.* at 8–11. The Court therefore held that "Ci2 categorically may not use the Weinrib Memorandum and any information derived therefrom." *Id.* at 11. The Court found, however, that Aydin had not carried his "heavy burden" to show that disqualification of Ci2's counsel was warranted. *Id.* at 13 (citing *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896 (2d Cir. 1982)).

That same day, the Court set a schedule for briefing Ci2's anticipated motion to vacate the Award and Aydin's anticipated cross-motion to confirm. Dkt. 47. On February 7, 2025, Ci2 filed a letter notifying the Court that it would not move for vacatur or oppose Adyin's cross-motion to confirm. Dkt. 48. On February 14, 2025, Aydin filed a motion to confirm the Award and a supporting memorandum of law. *See* Dkts. 50–52.

## II.     Discussion

### A.     Applicable Legal Standards

"Arbitration awards are not self-enforcing." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (cleaned up). Instead, "they must be given force and effect by being converted to judicial orders by courts." *Id.* The FAA provides a "'streamlined' process for a party seeking 'a judicial decree confirming an award.'" *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).

5

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (citation omitted). "The showing required to avoid summary confirmation of an arbitration award is high." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference.").

Review of an arbitral award by a district court thus "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman*, 2011 WL 6778499, at *2 (quoting *Willemijn*, 103 F.3d at 12). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

Courts evaluate a motion to confirm an arbitral award against a party that has failed to oppose the motion under the legal standards applicable to a motion for summary judgment. *See D.H. Blair*, 462 F.3d at 109–10. To prevail on such a motion, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court must view all facts "in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation omitted). In determining whether there are genuine issues of material fact, the

6

court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

Even when a motion for summary judgment is unopposed, as here, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). In reviewing an unopposed motion for confirmation of an arbitral award,

> a court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.

*D.H. Blair*, 462 F.3d at 110 (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244). Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 6 Civ. 5106, 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).

### B.     Confirmation of the Arbitral Award

On the basis of the Award, and on the very limited review that is appropriate, the Court finds summary judgment warranted, as Aydin has shown there is no material issue of fact in dispute. The AAA arbitrator acted within the scope of the authority granted him by the parties. *See* 9 U.S.C. § 10(a)(4); Award ¶ 11 (quoting parties' arbitration agreement). Having considered, *inter alia*, the evidence adduced over three days of proceedings, the Arbitrator concluded, in a 64-page final award, that Adyin was entitled to dismissal of each of Ci2's claims. *See id.* ¶¶ 175–76. As to the claims for breach of contract and anticipatory breach, the arbitrator

7

found that Ci2 had not shown that Aydin had acted "unreasonably" in seeking additional consideration for the "substantially and materially different set of rights and change[d] terms that Netflix was seeking." *Id.* ¶¶ 142, 145, 146; *see also* Option Agreement § 3(m) (Aydin's approval was "not to be unreasonably withheld"). Nor was it a breach of the implied covenant of good faith and fair dealing for Aydin, under these circumstances, to reject a "material[]" alteration of the "rights, terms and conditions that the Parties negotiated and incorporated into the [option agreement]." *Id.* ¶ 152. The arbitrator, finally, concluded that Aydin had not breached the agreement in principle, to the extent it created any enforceable obligations (the arbitrator was skeptical). *Id.* ¶¶ 163–65; *see also id.* ¶ 162 (the agreement in principle "is best characterized as an 'agreement to agree,' which is not enforceable under New York law"). And Ci2 disputes none of this. *See* Dkt. 48 (disclaiming any challenge to the Award).

The Award, in short, leaves no doubt that there is a "colorable justification for the outcome reached" by the arbitrator. *Landy Michaels*, 954 F.2d at 797. Accordingly, the Court confirms the Award in favor of Aydin.

## CONCLUSION

For the reasons stated above, the Court confirms the Award. The Court respectfully directs the Clerk of Court to enter judgment accordingly, to terminate all pending motions, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: February 24, 2025
New York, New York